UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHARITY N.,

                Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,

                Defendant.

Case No. 2:19-CV-0455-TLF

ORDER

Plaintiff has brought this matter for judicial review of defendant's denial of her applications for Disability Insurance Benefits and Supplemental Security Income disability benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge.

As discussed below, the ALJ's decision is reversed and remanded for an award of benefits.

I. <u>ISSUES FOR REVIEW</u>

    A. Did the ALJ commit harmful error by discounting the opinions of treating physicians Dr. Poolos (neurologist) or Dr. Dassel (primary care physician)?

    B. Did the ALJ commit harmful error in finding plaintiff's statements about her condition and limitations were not credible?

ORDER - 1

C. Did the ALJ commit harmful error in finding that plaintiff's seizure condition did not meet the criteria for Social Security Listing 11.02(D) concerning dyscognitive seizures?

II. DISCUSSION

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla," of evidence. *Id.*

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court considers in its review only the reasons the ALJ identified and may not affirm for a different reason. *Id.* at 1010. Furthermore, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citations omitted).

A. Treating physicians

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d

1194, 1198 (9th Cir. 2008)). When a treating or examining physician's opinion is contradicted, an ALJ must provide specific and legitimate reasons for rejecting it. *Id.* In either case, substantial evidence must support the ALJ's findings. *Id.* Under Ninth Circuit law, opinions from non-examining medical sources that contradict a treating physician's opinion will trigger the "specific and legitimate reasons" standard of review. *See, e.g.*, *Revels v. Berryhill*, 874 F.3d 648, 662 (9th Cir. 2017).

An ALJ may not reject a medical source opinion because it is based on the claimant's self-reports when the medical source analyzes those self-reports using objective measures. In *Buck v. Berryhill*, the court held that the ALJ erred when he discounted the examining physician's opinion on the basis that the "opinion was based in part on [the claimant's] self-report" because the examining doctor "also conducted a clinical interview and a mental status evaluation." 869 F.3d 1040, 1049 (2017). The court held that the interview and mental status evaluation were "objective measures and cannot be discounted as a 'self-report.'" *Id.*

In this case, the ALJ erred by rejecting evidence from the plaintiff's treating neurologist, Dr. Poolos. AR 30. This neurologist confirmed that plaintiff had seizures two to four times each month, on average. AR 1171. Dr. Poolos specializes in epilepsy and presented plaintiff's case to a team of physicians at the Harborview Epilepsy Center in Seattle – the result was that plaintiff's diagnosis was determined by the Harborview panel of epilepsy specialists to be "refractory epilepsy". AR 551. This assessment was based on a long history of physician-patient relationship, consultation with other epilepsy experts, and objective medical testing from 2007 and 2016. AR 551.

ORDER - 3

The plaintiff's complex seizures were diagnosed by Dr. Poolos, and other physicians diagnosed plaintiff with the same seizure disorder; Dr. Poolos also found that the seizures were "manifested by loss of consciousness" and characterized the seizures as complex partial seizures. AR 586, 589, 710, 960, 1171. The ALJ mistakenly interpreted "loss of consciousness" to mean that plaintiff passed out. AR 30. Instead, the record shows that plaintiff appeared to be awake but had no cognitive awareness during the seizures. AR 586, 589, 710, 960, 1171.

The ALJ's determination that Dr. Poolos' opinion was of questionable accuracy is not supported by substantial evidence.

The ALJ also committed harmful error by rejecting the opinion of plaintiff's primary care physician, Dr. Dassel. Dr. Dassel opined that plaintiff would be absent from work twice each month – or more – due to symptoms of her seizure disorder. AR 1166-1169. The ALJ rejected this opinion. AR 29. There is not substantial evidence in the record to support the ALJ's decision that Dr. Dassel was incorrect in this assessment. Dr. Dassel considered the longitudinal evidence of plaintiff's condition. The medical record contains overwhelming evidence to support the assessments of both Dr. Poolos and Dr. Dassel. Given the medical record showing well-qualified treating physicians, multiple specialists who reviewed objective evidence, and Dr. Dassel's history of being plaintiff's long time treating physician, the ALJ's decision must be reversed. This is harmful error, because if Dr. Poolos' opinion, and Dr. Dassel's opinion, were accepted and given full weight, the plaintiff's condition would satisfy the criteria for Social Security Listing 11.02(D) concerning dyscognitive seizures.

B. The ALJ's consideration of plaintiff's statements

In weighing a plaintiff's own statements, an ALJ must use a two-step process. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014). If the first step is satisfied, and provided there is no evidence of malingering, the second step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ can provide specific findings and clear and convincing reasons for rejecting the claimant's testimony. *Id. See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistent testimony about symptoms is clear and convincing reason to discount subjective allegations).

The ALJ is required to state what statements they determined to be not credible and point to the evidence that undermines the plaintiff's credibility. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Although the Court upholds an ALJ's findings that are supported by inferences reasonably drawn from the record, *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004), the ALJ must actually state such inferences to give a cogent explanation.

In this case, the ALJ rejected plaintiff's testimony for the same unsupported reasons that Dr. Poolos' and Dr. Dassel's opinions were rejected. AR 26-27. The ALJ erroneously concluded that plaintiff improved with treatment, but the record shows that she continued to have at least two seizures each month on average, even with

treatment. AR 59-60, 303, 1067. Dr. Poolos observed that plaintiff had EEG monitoring in 2007 that recorded two complex partial seizures from left temporal leads. AR 420-22. Although plaintiff lost her health insurance in 2013 because she lost her job, she resumed treatment in 2015. AR 64, 350. Plaintiff could not work, because when she tried to keep working, both she and her employer eventually found that she could not sustain that employment, given the repetition of her seizures and the side effects of medication. AR 59-60, 303. Therefore, all of the ALJ's reasons for discounting the plaintiff's statements are unsupported by substantial evidence.

C. Step Three – Listing 11.02(D)

Plaintiff contends the ALJ erred at step three of the sequential evaluation process. In particular, plaintiff challenges the ALJ's finding that plaintiff does not have an impairment or combination of impairments that meets listing 11.02(D).

20 C.F.R. Part 404, Subpart P, Appendix 1, § 11.02(D). Listing 11.02 provides, in relevant part:

> *Epilepsy*, documented by a detailed description of a typical seizure and characterized by A, B, C, or D: . . .
>
> D. Dyscognitive seizures (see 11.00H1b) . . . occurring at least once every two weeks for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:
> 1. Physical functioning (see 11.00G3a); or
> 2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
> 3. Interacting with others (see 11.00G3b(ii)); or
> 4. Concentrating, persisting, or maintaining pace (see 11.00Gb3(iii)); or
> 5. Adapting or managing oneself (see 11.00Gb3(iv)).

According to 20 C.F.R. Part 404, Subpart P, Appendix 1, § 11.00H1, epilepsy is "a pattern of recurrent and unprovoked seizures"; for adults, a dyscognitive seizure is

ORDER - 6

one of the two "most common potentially disabling seizure types". As explained in § 11.00H1b, a dyscognitive seizure means that the person experiences an alteration of consciousness, yet this happens without convulsions or loss of muscle control. The Social Security Administration requires "at least one detailed description of your seizures from someone, preferably a medical professional, who has observed at least one of your typical seizures. . . " 20 C.F.R. Part 404, Subpart P, Appendix 1, § 11.00(H).

At step three, the ALJ must evaluate the claimant's impairments to decide whether they meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R § 404.1520(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If they do, the claimant is deemed disabled. 20 C.F.R § 404.1520(d). The burden of proof is on the claimant to establish he or she meets or equals any of the impairments in the listings. *Tackett*, 180 F.3d at 1098. "A generalized assertion of functional problems is not enough to establish disability at step three." *Id.* at 1100 (citing 20 C.F.R. § 404.1526). An ALJ "must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

To meet a listing, a claimant "must have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. § 404.1525(d). *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

As discussed above, when the ALJ's errors are corrected, the evidence shows that plaintiff meets the criteria for listing 11.02(D). The ALJ's decision to the contrary is not supported by substantial evidence. The plaintiff kept a detailed seizure log between August 2015 and July 2017, using her own experience and also noting the observations

of persons present at the time of the seizure; the seizures occurred for years; and her neurologist noted that on average the seizures happened at least two to four times per month. AR 56, 58, 63, 335-49, 416, 420-22, 551, 557, 570, 579, 989, 1038-39, 1114, 1171. The defendant has not pointed to any regulations that suggest the seizures must be observed by a physician in order to meet the criteria. Nor has the defendant shown any legal reason why the average number should not be considered; because the seizures are by definition interfering with plaintiff's cognition, any precise distribution of the number of seizures that occur each week would be difficult if not impossible to measure. The record shows that plaintiff lost consciousness during her seizures. AR 586, 589, 710, 960. There were periods of about 20-30 minutes, or more, after each seizure when plaintiff was not able to function, mentally or physically. AR 61-62. The seizures or medications affected her memory and cognition, and one of the medicines caused tremors. AR 411-12, 420, 468, 481, 482, 491, 498, 533.

Her seizures were observed by family members and persons (including clients, and her supervisor) who observed seizure-related odd behavior while she was cutting hair at the beauty salon where she worked. AR 61, 350, 579. Although physicians did not directly observe her seizures, in 2007 and in August 2016, neurologists evaluated objective testing and made findings that were consistent with epilepsy; in 2011 and 2015 her neurologists suggested that plaintiff should consider having surgery to reduce or eliminate her seizures. AR 380-381, 386, 571, 480, 491-539. In 2013, she experienced seizures at work so often that plaintiff lost her job. AR 59-60, 302-303, 350. For three years – between 2014 and 2017 – the longest stretch where plaintiff had not experienced a seizure was for about 6 weeks. AR 1168.

### E. Award of benefits is the appropriate result

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668. The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

The Ninth Circuit emphasized in *Leon v. Berryhill* that even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. 80 F.3d 1041, 1045 (9th Cir. 2017).

In this case, a remand for another hearing would serve no useful purpose. The record is complete, and when the opinions of Dr. Poolos and Dr. Dassel are given full weight, and when plaintiff's statements are not erroneously evaluated, the evidence supports a finding that plaintiff is disabled. Her condition would meet the criteria for listing 11.02(D).

Based on the foregoing discussion, the Court finds the ALJ improperly determined plaintiff to be not disabled.

The Court therefore **REVERSES AND REMANDS** for an award of benefits.

Dated this 19th day of December, 2019.

Theresa L. Fricke
United States Magistrate Judge

ORDER - 10